## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **HUSSAIN SHAFFI,**<br><br>　　*Plaintiff*,<br><br>　　v.<br><br>**LEIDOS, INC.**<br><br>**LEIDOS BIOMEDICAL RESEARCH, INC.**<br><br>　　*Defendants*. | Case No.:   1:24-cv-02554-ABA |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants, Leidos, Inc. and Leidos Biomedical Research, Inc. (collectively "Defendants"), through undersigned counsel, hereby submit this Memorandum in Support of their Motion to Dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

As an initial matter, Leidos, Inc. should be dismissed as a defendant in this case. Plaintiff worked for Leidos Biomedical Research, Inc., not Leidos, Inc. Moreover, Plaintiff neither alleged facts to support joint employment, nor facts that support treating these two distinct legal entities (and employers) as a single employer.

In addition to dismissing Leidos, Inc., Plaintiff cannot bring a Section 1983 claim (Count I), as the Amended Complaint fails to allege that Defendants were acting under the color of law of the state. Count II, Plaintiff's Section 1981 retaliation claim, fares no better, as Plaintiff has not alleged sufficient facts to demonstrate that he engaged in protected activity or that his voluntary resignation constituted a constructive discharge. As such, Plaintiff's Amended Complaint should be dismissed in its entirety.

I. **RELEVANT FACTUAL ALLEGATIONS**[1]

Plaintiff was employed by Leidos Biomedical Research, Inc. to provide quality assurance services at federal agencies in Maryland. Amended Complaint ("Am. Compl.") ¶ 26. Plaintiff's immediate supervisor was Dr. Ligia A. Pinto. *Id* at ¶6. Plaintiff believed that Dr. Pinto was not interested in Good Clinical Laboratory Practice. *Id.* at ¶ 30.

After the departure of Plaintiff's Direct Report, there were two people hired in April 2023 that reported to the Quality Control Manager, and not Plaintiff. *Id.* Dr. Pinto allegedly told Plaintiff several times that his Direct Report "has to go." *Id.* at ¶ 33.

On September 25, 2023, Plaintiff alleges he was summoned by Dr. Pinto and told "You go find something and leave." *Id.* at ¶34. Plaintiff met with the HR director later that morning and indicated that a 'posse' was after him. *Id.* Plaintiff then alleges there was a total of ten meetings with HR where Plaintiff was assured that Dr. Pinto's supervisor Dr. Freedman was also looking into the matter regarding Dr. Pinto's bullying. *Id.* at ¶ 35. Plaintiff alleges that he was forced to resign from his position as Quality Assurance Specialist IV. *Id.* at ¶ 2.

II. **STANDARD OF REVIEW**

A Rule 12(b)(6) motion tests the sufficiency of a complaint. Although the pleading standard set forth in Rule 8 does not require "detailed factual allegations" in a complaint, it nonetheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff is obligated to assert the grounds upon which he is entitled to relief, and, in doing so, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

[1] Although well-pleaded facts alleged in the Amended Complaint must be accepted as true for purposes of evaluating a motion to dismiss, nothing in this memorandum should be construed as an admission by Defendants of the truth of any allegation contained in the Amended Complaint for any purpose.

2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Brown v. McClure*, No. 12-3704, 2013 WL 4760970, at *3 (D. Md. Sept. 3, 2013) (Hollander, J.). Instead, the complaint must outline with sufficient facts each element of the cause of action asserted. *Iqbal*, 556 U.S. at 678; *see also Reed v. Md. Dep't of Human Res.*, No. 12-0472, 2013 WL 489985, at *3 (D. Md. Feb. 7, 2013). In order to survive a motion to dismiss, a cause of action must be supported by "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557). A plaintiff must instead plead "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level," and a plaintiff must provide the grounds for his entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 555-56 (citations omitted). "[N]aked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678; *see also Petty v. Sampong,* No. 14-1779, 2014 WL 4662397, at *2 (D. Md. Sept. 16, 2014).

Furthermore, when evaluating the sufficiency of a complaint, although this Court must accept all allegations in a Complaint as true, this tenet is inapplicable to legal conclusions. *See Reed*, 2013 WL 489985, at *3; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, pleadings that are no more than conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Petty*, 2014 WL 4662397, at *2. Indeed, as the Supreme Court explained, courts

should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. ARGUMENT

#### A. Leidos, Inc. Should be Dismissed as a Defendant.

To maintain claims against multiple entities in an employment case, a plaintiff must allege facts sufficient to implicate either the integrated enterprise doctrine or joint employment doctrine. The integrated enterprise doctrine, initially developed in the labor relations context but subsequently imported into the civil rights context, applies when two nominally separate entities are so interrelated that they constitute a single employer for liability purposes. *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442-43 (4th Cir. 1999). In contrast, the joint employment doctrine applies when two or more entities employ the same individual. *Butler v. Drive Automotive Inds. of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015) (collecting cases) (internal quotations omitted) (explaining that an entity's exercise of control over an individual "is the principal guidepost post" for evaluating joint employment). Courts apply two distinct tests to determine whether a plaintiff can pursue civil rights claims under the integrated enterprise doctrine or under the joint employment doctrine. *See e.g., Carter v. Dominion Energy, Inc.*, 529 F. Supp. 3d 525, 543 (W.D. Va. 2021) (discussing nine factor test within the Fourth Circuit to analyze a joint employer relationship for the purposes of a Section 1981 claim); *Dunlap v. TM Trucking of the Carolinas, LLC,* 288 F. Supp. 3d 654, 664 (D.S.C. 2017) (discussing four factor integrated employer test for the purposes of a Section 1981 claim); *Uzzell v. Johnson,* No. 5:20-CV-167-FL, 2021 WL 4267711, at *22 (E.D.N.C. Sept. 20, 2021) (discussing the principle of joint employer liability in the context of a Section 1983 claim).

Except for naming two defendants, and making a conclusory reference that Leidos, Inc. and its subsidiary Leidos Biomedical Research, Inc. employed executives that supervised Plaintiff

(Am. Compl. ¶ 3), the Amended Complaint does not contain any facts to suggest whether Plaintiff is attempting to sue Leidos, Inc. under the integrated enterprise doctrine or as a joint employer. Moreover, there are absolutely no facts alleged to suggest that Plaintiff can support the factors required to proceed under either theory. What is clear on the face of the Amended Complaint, however, is that Plaintiff worked for Leidos Biomedical Research, Inc., and not Leidos, Inc. (Am. Compl. ¶ 26, "**Plaintiff was employed by Defendant Leidos Biomedical Research, Inc.**") (emphasis added).

Accordingly, without more, Leidos, Inc. should be dismissed as a defendant in this case.

**B. Plaintiff's Amended Complaint Fails to State a Legally Cognizable Section 1983 Claim Because Defendants Are Not State Actors.**

"A plaintiff can only succeed on a § 1983 claim if a defendant acts "under color of" state law…Therefore, § 1983 **does not regulate private conduct, no matter how discriminatory or wrongful.**" *Peltier v. Charter Day Sch., Inc.,* 37 F.4th 104, 140 (4th Cir. 2022), (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L.Ed.2d 130 (1999) (emphasis added).

Plaintiff must show "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001). Such a nexus exists when a private entity exercises powers "traditionally exclusively reserved to the State." *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). As this Court noted in *Briggs v. T & D Plumbing & Heating Co.,*

> Exclusivity is essential. Thus, state action exists when private actors conduct state-regulated elections, operate a company town, or manage a municipal park. By contrast, the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State. **Nor does significant or even total engagement in performing public contracts convert the acts of a private company into state action.**

*Briggs v. T & D Plumbing & Heating Co.,* No. CIV. WDQ-10-2714, 2011 WL 3798227, at *2 (D. Md. Aug. 24, 2011) (emphasis added) (internal quotations omitted).

Here, Plaintiff's Amended Complaint is notably void of any allegations that Defendants acted under the color of state law. There are no allegations whatsoever that even remotely suggest that Leidos, Inc. or Leidos Biomedical Research, Inc. were state actors of any kind. While Plaintiff does allege that Leidos Biomedical Research, Inc. was a contractor for the National Institute of Health (Am. Compl. ¶ 19), simply performing work on a public contract is insufficient for the purposes of a Section 1983 claim. *See e.g. Holly v. Scott,* 434 F.3d 287, 293 (4th Cir. 2006) (noting that a "great many private corporations, does business under contract with the government. But this is not by itself enough to subject it to constitutional liability."); *Rambaldi v. City of Mount Vernon*, No. 7:01-CV-03648-GAY, 2003 WL 23744272, at *4 (S.D.N.Y. Mar. 31, 2003), aff'd, 96 F. App'x 775 (2d Cir. 2004) (internal quotation omitted) ("Neither **the mere existence of a contract between a governmental agency and a private part**y nor the fact that a private entity leases space from a governmental agency **is sufficient to create a state action**.") (emphasis added).

Accordingly, Plaintiff fails to state a valid claim under Section 1983 and Count I should be dismissed.

### C. Plaintiff Fails to State a Cognizable Section 1981 Retaliation Claim

Not only is Plaintiff unable to allege a claim under Section 1983, his Section 1981 claim fares no better. "To make a cognizable claim for retaliation in violation of 42 U.S.C. § 1981, the plaintiff must allege that (1) he engaged in a protected activity relating to racial discrimination, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse employment action." *Williams v. Kettler*

*Mgmt. Inc.,* No. CIV.A. CBD-12-1226, 2013 WL 398741, at *2 (D. Md. Jan. 31, 2013)**.**

1. **Plaintiff Fails to Plead Protected Activity Under Section 1981**

Even viewed in the light most favorable to Plaintiff, Plaintiff is unable to state a claim of Section 1981 retaliation since he has not alleged sufficient facts demonstrating that he engaged in qualifying protected activity – complaining of race discrimination. "There are two categories of protected activity—opposition and participation. Participation includes making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing. Opposition is a much broader category and includes staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities." *Ngatia v. Dep't of Pub. Safety & Corr. Servs.,* No. CIV. WDQ-14-0899, 2015 WL 996585, at *9 (D. Md. Mar. 4, 2015) (internal quotations omitted). Here, Plaintiff's Amended Complaint fails to allege of any activity where Plaintiff complained of race discrimination, let alone discrimination in general, and thus he cannot demonstrate he engaged in qualifying protected activity.

While Count II contains conclusory allegations that Plaintiff was subject to "retaliation for his protected complaints and oppositions to Dr. Pinto's discriminatory comments on the basis of race and ethnicity," (Am. Compl. ¶ 48), the Amended Complaint is notably void of any factual details whatsoever as to what these purported discriminatory comments comprised of.

For example, Plaintiff alleges in Paragraph 34 of the Amended Complaint that he met with the HR director, "indicating that a 'posse' was after him," (Am. Compl. ¶ 34) and was assured by HR that the matter regarding Dr. Pinto's "bullying" was being looked into (*Id.* at ¶ 35), but there are no allegations whatsoever that the purported ill treatment or "bullying" was due to Plaintiff's race. Therefore, even accepting Plaintiff's allegations as true, general complaints of ill treatment or "bullying" are insufficient to constitute protected activity for a retaliation claim. "[A] general

complaint of unfair treatment does not translate into a charge of illegal . . . discrimination." *McNair v. Computer Data Sys., Inc.*, No. 98-1110, 1999 WL 30959 at *5 (4th Cir. Jan. 26, 1999) (letter to DOE officials was not protected activity); *see also, e.g., Johnson v. Mechanics & Farmers Bank*, No. 07-1725, 2009 WL 188077 at *9, *aff'd*, 309 F. App'x 675, 685 (4th Cir. 2009) (disregarding superior's directive not objectively reasonable); *Hearn v. Int'l Bus. Machines*, No. 8:13-CV-827-T-30EAJ, 2013 WL 5499610, at *4 (M.D. Fla. Oct. 1, 2013), *aff'd*, 588 F App'x 954 (11th Cir. 2014) ("In order to constitute statutorily protected activity capable of supporting a 1981 retaliation claim, [the] [plaintiff]'s complaint must reasonably convey that [ ]he is opposing discrimination based specifically upon race, **versus some other type of discrimination or injustice generally.**") (emphasis added); *Barber v. CSK Distrib. Servs.,* 68 F.3d 694, 701-02 (3d Cir. 1995) (letter to Human Resources complaining about unfair treatment not protected activity under the ADEA).

    Likewise, the Plaintiff's Amended Complaint consists of no qualifying protected activity. Paragraph 7 of the Amended Complaint alleges that "**Dr. Pinto retaliated against Plaintiff** like she did against others, by taking adverse action against him **for exposing deletion of data dealing with COVID**" (Am. Compl. ¶7) (emphasis added). But this had nothing to do whatsoever with a complaint about discrimination and Plaintiff's alleged exposure of data deletion is nothing more than a "job-related policy discussions [which is] not protected." *Morris v. McCarthy*, 825 F.3d 658, 673 (D.C. Cir. 2016).

    Plaintiff has not alleged any facts whatsoever that he made complaints of race discrimination. *See Williams v. Primebridge Cap., LLC,* No. 618CV1698ORL22DCI, 2019 WL 13272279, at *3 (M.D. Fla. Jan. 24, 2019) (granting motion to dismiss with respect Section 1981 claim noting that "aside from this blanket assertion of protected activity, nothing in the Complaint,

as presently framed, would support a reasonable inference that Williams made any complaints of race discrimination."). In sum, none of Plaintiff's alleged internal complaints concerned unlawful conduct under Section 1981 and on this basis alone, his claim fails.

### 2. Plaintiff Does Not Allege Sufficient Facts Showing That He Was Constructively Discharged

Even if Plaintiff alleged qualifying protected activity under Section 1981, which he has not done, Plaintiff cannot demonstrate that he suffered an adverse action, as he voluntarily resigned.[2] Simply put, Plaintiff does not allege facts sufficient to maintain a constructive discharge claim. He does not plead any facts showing either that his working conditions were objectively intolerable or that Defendants' representatives were trying to force him to quit.

To prove he was constructively discharged, Plaintiff must be able to show that his working conditions were "so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Cooper v. Smithfield Packing Co., Inc.,* 724 F. App'x 197, 202 (4th Cir. 2018) (quoting *Green v. Brennan*, – U.S. –, 136 S. Ct. 1769, 1776–77 (2016)); *accord Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004).

Because "constructive discharge claims are susceptible to abuse by those who voluntarily leave their employment," the Fourth Circuit has insisted that they be "strictly cabined." *Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 294 (4th Cir. 2006) (citing *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187 (4th Cir. 2004)); *accord Rome v. Dev. Alts., Inc.*, No. 13-1935, 2014 WL 5013020, at *1 (4th Cir. Oct. 8, 2014).

---

[2] In Count II, it explicitly alleges that the purported adverse action faced was "terminating Plaintiff's employment with the Company." Am. Compl. ¶ 48. Thus, because this is the only adverse action Plaintiff claims he experienced in Count II as a result of his alleged protected activity, Defendants only address such claim of constructive discharge. Defendants reserve to the right to address any additional purported adverse actions Plaintiff claims he experienced if he raises such arguments in the future.

Plaintiff's Amended Complaint does not identify any conduct that was "so intolerable" that any reasonable person in his position would have felt compelled to resign. A single occurrence of Dr. Pinto allegedly telling Plaintiff he should "go find something and leave" in relation to a conversation about data entries (Am. Compl. ¶ 34) or that Plaintiff's direct report "has to go" (*Id.* at ¶ 33) certainly does not rise to the level required for a constructive discharge claim. *See Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (mere "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign") (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)).

Plaintiff's allegations are not sufficient to establish that the purported treatment by Dr. Pinto was objectively intolerable to compel him to resign. *See e.g. Lopez v. BMA Corp.*, No. 13-cv-2406-DKC, 2013 WL 6844361, at *11 (D. Md. Dec. 24, 2013) ("When the constructive discharge claim arises in the context of a hostile-environment lawsuit, the plaintiff must go beyond merely establishing a hostile work environment.").

Even if Plaintiff did allege objectively "intolerable" conduct, which he did not, he has not alleged that Leidos Biomedical Research Inc., his employer, deliberately subjected him to such conduct with the intention of forcing him to quit. *Heiko v. Colombo Savings Bank*, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) ("An employer's actions are deliberate only if they were intended by the employer as an effort to force the plaintiff to quit.") (quotation omitted).

In sum, there are no facts alleged in the Amended Complaint from which the Court can draw any inference about whether a reasonable person in Plaintiff's position would have felt compelled to resign. Plaintiff's Amended Complaint therefore fails the basic test of Fed. R. Civ. P. 8(a) to show he has a plausible claim for the relief he seeks based on an alleged constructive

discharge.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's Amended Complaint should be granted in its entirety. Defendants respectfully pray for all further relief, to which it may be entitled.

Dated: December 27, 2024

Respectfully submitted,

/s/ *Michael J. Murphy*
Michael J. Murphy, Md. Bar No. 22628
Ajente Kamalanathan (*to be admitted pro hac vice*)
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
1909 K Street, NW, Suite 1000
Washington, D.C. 20006
Tel.: (202) 887-0855
Fax: (202) 887-0866
Email: michael.murphy@ogletree.com
        ajente.kamalanathan@ogletree.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 27, 2024, I caused a true and correct copy of the foregoing to be electronically filed via the Court's CM/ECF filing system, which will send notification of such filing to the following:

Faisal Gill
GILL LAW FIRM
1717 Pennsylvania Avenue, NW, Suite 1050
Washington, DC 20006
(310) 418-6675
Fgill@glawoffice.com

*Counsel for Plaintiff*

*/s/ Michael J. Murphy*
Michael J. Murphy, Md. Bar No. 22628

*Counsel for Defendants*